The **STATE** of Ohio, Appellee,

v.

**BAZZY,** Appellant.

[Cite as *State v. Bazzy* (1993), 86 Ohio App.3d 546.]

Court of Appeals of Ohio,
Greene County.

No. 92–CA–65.

Decided Feb. 25, 1993.

*Robert Hendrix,* for appellee.

*William Rohrkaste,* for appellant.

FAIN, Judge.

The origin of this appeal lies in a transaction in which a confidential informant in the service of the police purported to sell, and a police officer purported to buy, a substance which turned out not to be LSD. Defendant-appellant Rick Bazzy, who was present at the scene of the transaction, was arrested and charged with aggravated trafficking. Understandably, at the close of the state's case Bazzy moved for a judgment of acquittal, and presently contends that the trial court erred by denying his motion.

Although this case illustrates the far reach of Ohio's drug laws, we conclude that there was sufficient evidence in the record to withstand Bazzy's motion for a judgment of acquittal. Therefore, the judgment of the trial court is affirmed.

I

A task force composed of police officers from a number of different jurisdictions set up a purchase of LSD. A confidential informant had told the police that Bazzy was a source for LSD.

On January 3, 1992, Bazzy and the confidential informant entered the parking lot of a restaurant in Beavercreek, and a police officer played the role of a buyer. The negotiation was videotaped.

Six sheets of paper were purchased. Each sheet contained one hundred perforated squares. A unit dose of LSD supposedly adhered to each square. When the sheets were ultimately tested, they tested negatively for LSD.

Although Bazzy frequently referred to the confidential informant as the person with whom the purchaser should deal, there was testimony that Bazzy said that he would "co-sign" for the confidential informant, and that he said several times that the items being sold were guaranteed to be good.

After a deal was agreed to, a signal was given and numerous police officers moved in to arrest Bazzy. Bazzy was charged with aggravated trafficking and drug abuse. Bazzy was convicted and sentenced accordingly. From his conviction and sentence for aggravated trafficking, Bazzy appeals. Bazzy's conviction and sentence for drug abuse is not the subject of this appeal.

## II

Bazzy's sole assignment of error is as follows:

"The trial court erred in denying the defendant's motion for acquittal pursuant to Crim.R. 29 as it pertains to aggravated trafficking in this case in that there was insufficient evidence of an offer to sell and no evidence that the purported drug for sale was a prohibited controlled substance, and, as such, the rejection of this motion by the court amounted to a denial of due process of law."

Essentially, Bazzy contends that the trial court erred by denying his motion for a judgment of acquittal. The denial of a motion for judgment of acquittal may not be the basis for a reversal on appeal if, from the evidence presented in the state's case, viewed in a light most favorable to the state, reasonable minds can reach different conclusions as to whether each material element of the offense has been proved beyond a reasonable doubt. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 555 N.E.2d 689, paragraph one of the syllabus.

Bazzy was charged with offering to sell a controlled substance. In a prosecution for offering to sell a controlled substance, the state is not required to prove that a controlled substance was, in fact, sold, or even that a controlled substance existed; rather, the state is merely required to prove that an offer was made to sell a controlled substance. *State v. Moreland* (Feb. 14, 1991), Montgomery App. No. 12278, unreported, 1991 WL 19357. The fact that there is a separate offense for offering to sell a counterfeit controlled substance, R.C. 2925.37, is of no consequence. *Id.*

Bazzy contends that the evidence was insufficient either to establish that there was an offer to sell a controlled substance or to link him to that transaction. We are not persuaded. Because participants in a drug transaction are not likely

to use either precise legal terms to define the transaction, or precise scientific terms to describe the merchandise, whether an offer to sell a controlled substance has, in fact, been made depends upon the totality of the circumstances and the language used. *State v. Patterson* (1982), 69 Ohio St.2d 445, 447, 23 O.O.3d 394, 395, 432 N.E.2d 802, 803; see, also, *State v. Frost* (Oct. 2, 1990), Montgomery App. No. 12042, unreported, 1990 WL 148063.

■ Lee Miley testified that he had been with the Beavercreek Police Department for fourteen years and with the Greene County Task Force almost three years. He testified that LSD is normally sold in sheets containing one hundred doses and that the statutory bulk amount is ten unit doses. He testified that the sheets that were the subject of the transaction resembled sheets of LSD.

David Tidd testified that he was a deputy sheriff with the Greene County Sheriff's Department, currently assigned to the Greene County Drug Task Force. He testified that Bazzy said during the transaction that he would "co-sign" for the confidential informant; that Bazzy guaranteed the quality of the merchandise and said he had never had any complaint; and that Bazzy told the purchasing police officer that, "if you took more than two hits of this stuff, you couldn't drive." Tidd testified that "to co-sign" is a term of art in the drug world, and that it meant that Bazzy was ultimately responsible for the goods sold and that the negotiation of the selling price was up to him and he approved the price as negotiated.

Larry Fletcher, the officer who actually made the purchase, testified that he was a sheriff's deputy currently assigned to the Greene County Drug Task Force. Fletcher testified concerning the way in which LSD is normally sold as follows:

"LSD is normally on a sheet of paper approximately two and a half inches by two and a half inches. One hit is about a quarter inch square. These are on full size sheets of 8 and a half by 11. They were big stamps. The acid for LSD, sometimes it comes on plan [*sic*] paper. There is nothing—there's little perforations. As you can see, there are one hundred perforations, just little squares, and sometimes you got a stamp. The stamps we have seem [*sic*] are little McDonald's—the golden arches of McDonald's, looks like a little tatoo. These here are big stamps on full size sheets of paper."

Fletcher testified that Bazzy told him, "if you take two of those, you had better not drive." Fletcher also testified that Bazzy told him that he had never heard any complaints.

Fletcher testified that Bazzy said that he would "co-sign" for the confidential informant. Fletcher testified that this expression meant that Bazzy approved the deal.

From all of the circumstances, we conclude that there is evidence in the record that, when viewed in a light most favorable to the state, could persuade a reasonable mind, beyond reasonable doubt, that Bazzy had assumed responsibility for the transaction and had approved it. Accordingly, a reasonable finder of fact could conclude, beyond a reasonable doubt, that Bazzy had made an offer to sell LSD, a controlled substance. Furthermore, there is evidence in the record from which a reasonable factfinder could conclude that the amount offered for sale exceeded the bulk amount.

Bazzy's sole assignment of error is overruled.

### III

Bazzy's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.