OPINION
Defendant-appellant, Terrance Lamont Clark ("appellant"), appeals from his conviction for trafficking in crack cocaine.
On December 8, 1999, the Grand Jury indicted appellant for one count of trafficking in cocaine, a felony of the fifth degree, in violation of R.C. 2925.03. Appellant entered a plea of not guilty to the indictment.
Trial commenced on January 23, 2001. Daniel Flanagan testified that, on October 29, 1999, he drove to the intersection of Station Avenue and Audrey Place in Ashtabula in the late afternoon. Flanagan slowed to make a left-hand turn when his vehicle was approached by four to six people. At least two entered his car while others were putting the upper parts of their bodies through the windows. The men had baggies of what Flanagan believed was crack cocaine in their hands and asked him what he wanted. Flanagan noticed one of the men wore a black and yellow shirt. Flanagan told the men to get out of his car. Flanagan called the police upon his return home.
Officer Cleveland responded. After the officer arrived at his home, Flanagan related what had occurred and offered to drive Officer Cleveland to the intersection. Before they left, Flanagan gave officer Cleveland a flannel shirt to disguise his uniform. Flanagan again observed the group of men standing on the corner, waving their arms at passing vehicles while saying "over here." Flanagan pointed out the man in the black and yellow shirt to Officer Cleveland as one of the men who approached his car the first time. Flanagan stopped the car. The man in the shirt approached and placed the upper portion of his body through the driver's window. He had cash in one hand and several baggies in his other hand. The man stated "How much you want" to which the officer replied "give me 20." At that point, Officer Cleveland identified himself while drawing his revolver. The man in the black and yellow shirt dropped the baggies and began to run with the officer in pursuit. Flanagan could not identify appellant as the man in the black and yellow shirt at trial, although he did identify the shirt.
Harold Crislip testified that, on the day in question, he heard a doorknob turning and say a man trying to enter the upstairs apartment. Finding it empty and locked, the man can down the stairs and tried to open Crislip's door. Crislip confronted the man, who backed away. Crislip saw a police officer coming toward them. The man handed Crislip a black shirt. Crislip could not identify appellant as the man who tried to enter his home.
Officer George Cleveland testified he accompanied Flanagan to the site of the earlier complaint. After Flanagan recognized an individual wearing a black and yellow jersey, Officer Cleveland asked Flanagan to wave the man over to the vehicle. The man approached the driver's side of the car and placed his upper body through the open window. The man asked "what you want?" Officer Cleveland observed baggies of what he believed to be crack cocaine in the man's hand. Baggies such as the ones in the man's possession are commonly used to sell pre-measured amounts of crack cocaine.
Officer Cleveland told the man to give him a 20 bag, which is the way a certain amount of crack cocaine is commonly referred to in drug transactions. The man, whom Officer Cleveland identified as appellant, began to give the officer a baggie. At that point, Officer Cleveland, lacking the funds to complete the transaction, identified himself as a police officer and drew his weapon. Appellant dropped the baggies and began to run, with Officer Cleveland in pursuit. Officer Cleveland found appellant at Crislip's home and placed him under arrest. Crislip gave Officer Cleveland the shirt. Appellant said that the shirt was his.
Appellant testified in his defense and denied selling crack cocaine or having it in his possession that day. Appellant stated he was standing on the intersection talking when he saw a man in a flannel shirt exit a car and began waving a gun. Thinking this was a robbery, appellant ran away, as did everyone else standing there with him. Appellant denied he was wearing the black and yellow shirt.
The jury returned a verdict of guilty. On May 14, 2001, the trial court issued a judgment entry of sentence. Appellant received a sentence of eight months, with 196 days credited for time served.
On appeal, appellant assigns the following errors for review:
 "[1.] The defendant-appellant's constitutional rights to due process under the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Section 10 of the Ohio Constitution were prejudiced by the ineffective assistance of counsel.
 "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
In his first assignment of error, appellant contends he was denied effective assistance of counsel because his attorney did not object to witnesses' references to his possession of crack cocaine. Appellant points out that no narcotics were recovered. Therefore, appellant argues no proof exists to show that the witnesses actually saw crack cocaine in his hand. Appellant also claims defense counsel should have argued that his alleged statement of "what you want" to Officer Cleveland did not constitute an offer to sell crack cocaine.
To prevail on a claim of ineffective assistance of counsel, a defendant must show both that this counsel's performance was deficient and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. State v. Goodwin,84 Ohio St.3d 331, 1999-Ohio-356, quoting Strickland v. Washington
(1984), 466 U.S. 668, 687. A Sixth Amendment violation does not occur unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. State v. Bradley (1989),42 Ohio St.3d 136, 142. To establish prejudice, a defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id. at paragraph three of the syllabus.
During the trial, the defense pursued a theory of mistaken identity. Appellant testified that he did not approach the automobile in which Officer Cleveland was sitting and offer to sell crack cocaine. Appellant maintained that he was standing on the corner, talking with a group of people, when he saw a man in a flannel shirt jump out of a car while waving a gun. Appellant assumed a robbery was taking place and began running with the rest of the people. Appellant denied wearing the black and yellow shirt.
Upon review of counsel's performance at trial, there is a strong presumption that defense counsel's actions were part of a valid trial strategy. An attorney can pursue numerous avenues in providing effective assistance of counsel. Even debatable trial strategies do not constitute ineffective assistance of counsel. State v. Maldondo, 9th Dist. No. 01CA007924, 2002-Ohio-2205, 2002 Ohio App.LEXIS 2214. Only Officer Cleveland identified appellant in court. The other two prosecution witnesses were unable to identify appellant, only the black and yellow shirt. Defense counsel's strategy of presenting a mistaken identity argument to the jury was valid under the circumstances. Therefore, objecting to the references regarding the crack cocaine and what was said by the man in the black and yellow shirt would have undermined the defense, including appellant's own testimony. Appellant has not demonstrated any prejudice by his attorney's performance at trial. Appellant's first assignment of error lacks merit.
Appellant's second assignment of error challenges the weight of the evidence supporting his conviction. Appellant asserts the prosecution did not establish he sold, or offered for sale, a controlled substance. Appellant states crack cocaine was not introduced into evidence at trial. Instead, the state relied upon the opinions of witnesses that crack cocaine was offered for sale.
A manifest weight of the evidence challenge contests the believability of the evidence presented. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13. When making the determination as to whether a conviction is or is not against the manifest weight of the evidence, an appellate court must review the entire record, weight the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v.Thomas (1982), 70 Ohio St.2d 79. The issue when reviewing a manifest weight of the evidence challenge is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Nields,93 Ohio St.3d 6, 25, 2001-Ohio-1291, quoting State v. Getsy,84 Ohio St.3d 180, 193-194, 1998-Ohio-533. When reviewing a manifest weight of the evidence challenge, an appellate court sits as the "thirteenth juror." Thompkins, supra, at 387. The granting of a new trial is exercised only in exceptional cases where the evidence weighs heavily against a conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175.
Appellant's argument centers on the contention that an actual controlled substance must be offered for sale in order to support his conviction. In State v. Henton (1997), 121 Ohio App.3d 501, this court upheld the conviction of a defendant who gave a confidential informant peanuts instead of crack cocaine. The court noted that R.C. 2925.03(A)(1) only requires that a person knowingly sell or offer to sell drugs. The offer to sell simply means that a person declares his or her readiness or willingness to sell a controlled substance. Whether a defendant makes an offer to sell a controlled substance must be determined by the totality of the circumstances, including dialogue and the course of conduct of the accused. Henton's conduct of approaching automobiles that pulled up to the curb in an "open air drug market" together with statements that he could provide cocaine, conveyed Henton's willingness to enter into a drug transaction.
There is no requirement that a controlled substance he transferred in order to support a violation of R.C. 2925.03. State v. Patterson (1982),69 Ohio St.2d 445. In State v. Beamon, 11th Dist. No. 200-L-028, 2001-Ohio-7071, 2001 Ohio App. LEXIS 5647, this court upheld the conviction of a defendant who approached a vehicle and indicated he was "holding" before trying to grab $50 from a special agent's hand.
In the instant case, there was evidence appellant twice approached Flanagan's automobile and attempted to engage in a drug transaction. There was evidence appellant asked Flanagan and Officer Cleveland "what you want" while holding money and baggies of what appeared to be crack cocaine in his hands. After Officer Cleveland asked to be given a 20 bag, appellant began to hand the officer one of the baggies. The language employed by both the officer and appellant supports the belief that his was indeed a drug sale. After all, participants in a narcotics transaction usually do not employ precise, legal terms during the sale but are prone to use slang. See State v. Bazzy (1993), 86 Ohio App.3d 546. The evidence admitted a trial supports appellant's conviction for trafficking in cocaine. The verdict was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
The judgment of the Ashtabula County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, P.J., ROBERT A. NADER, J., concur.