OPINION
{¶ 1} Defendant, Gary Tisdale, appeals from his conviction and sentence for trafficking in cocaine, tampering with evidence, possession of criminal tools, and failure to comply with an order or signal of a police officer.
 {¶ 2} On the afternoon of February 20, 2001, Tom Offinger, a confidential informant, called Dayton Police Det. Rick Elworth concerning a drug dealer who was selling crack cocaine. Det. Elworth had worked with Offinger for about a year and found him to be reliable. Offinger told Det. Elworth he had the dealer's cell phone number and could set up a drug buy.
 {¶ 3} Det. Elworth met with Offinger later that evening and told him to call the dealer and request one half ounce of crack cocaine. Det. Elworth dialed the cell phone number Offinger gave him for the drug dealer and then handed the phone to Offinger. Det. Elworth could hear Offinger and the dealer discussing drugs. Offinger arranged to buy one-half ounce of crack cocaine. The dealer said the price would be between five and six hundred dollars. Offinger told the dealer he would call him back after he got his money together.
 {¶ 4} Det. Elworth immediately arranged a "buy/bust operation," which included fitting Offinger with a transmitter to wear during the buy and deploying both plainclothes and uniformed officers in both unmarked vehicles and marked cruisers around Offinger's apartment where the buy would take place. Det. Elworth then drove Offinger to his apartment where Offinger called the drug dealer again. As before, Det. Elworth dialed the dealer's cell phone number and handed the phone to Offinger, who told the dealer he had his money and was ready to buy. The dealer said he would be right over.
 {¶ 5} Five minutes later Defendant Gary Tisdale drove a vehicle into the parking lot at 211 Ryburn Street, Dayton, and parked behind Offinger's apartment. Offinger exited the back door of his apartment and got into the passenger seat of Defendant's car. Defendant handed Offinger a baggie that contained what appeared to be a chunk of crack cocaine. The piece, however, seemed to be smaller than the half-ounce Offinger had requested. The two men haggled about the price and the quantity until Offinger gave a prearranged signal, and police then moved in to arrest Defendant.
 {¶ 6} Officers in raid uniforms in an unmarked vehicle pulled behind Defendant's vehicle, blocking it from leaving the parking lot. As the officers exited their vehicle and began to approach Defendant's vehicle, they called out, "Police. Get out of the car." Defendant then suddenly drove over a concrete parking barrier, through the yard between apartment buildings, down a hill and out onto Ryburn Street, nearly hitting Officer House in the process.
 {¶ 7} Police in marked cruisers activated their emergency lights and began to pursue Defendant's vehicle. Defendant led police on a chase that proceeded East on Ryburn, south on Riverside Drive, and then east on Ridge Avenue. Throughout the chase Defendant drove at high rates of speed, ignored stop signs, and weaved in and out of traffic.
 {¶ 8} At the Ridge Avenue bridge Defendant pulled into the oncoming traffic next to the bridge rail, slowed down and tossed a baggie of what to pursuant officers appeared to be crack cocaine over the bridge into the river. Police apprehended Defendant after Defendant crossed the bridge.
 {¶ 9} Defendant testified in his own behalf at trial that he knew Offinger from riding the bus with him, that he loaned Offinger twenty dollars on the afternoon of February 20, 2001, and that Offinger had promised to pay him back later that same day. Defendant gave Offinger his cell phone number so that Offinger could call him when he got the money to repay Defendant. Offinger called Defendant several times that afternoon to keep him posted on the efforts to get his money. At about 10:30 p.m., Offinger called and told Defendant he had part of his money. Defendant immediately went over to Offinger's apartment to get his money.
 {¶ 10} When Defendant arrived Offinger did not have Defendant's money and instead told Defendant he wanted to buy drugs. At that point police moved in and approached Defendant's car. Not knowing what was going on, Defendant "freaked out" and drove off. Defendant did not know police were pursuing him until he turned off Riverside Drive onto Ridge Avenue. Defendant denied having any drugs, offering to sell Offinger any drugs, or throwing any drugs off the bridge into the river.
 {¶ 11} Defendant was indicted for felonious assault on a peace officer, R.C. 2903.11(A)(2), trafficking in crack cocaine in an amount that equaled or exceeded ten grams but was less than twenty-five grams, R.C. 2925.03(A), tampering with evidence, R.C. 2921.12(A)(1), failure to comply with an order or signal from a police officer, R.C. 2921.331(B) and (C)(5)(a)(i), and possession of criminal tools, R.C. 2923.24(A). Following a jury trial, Defendant was found guilty on all of the charges except felonious assault. The trial court sentenced Defendant to consecutive terms of imprisonment totaling four years.
 {¶ 12} Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 13} "The State Presented Insufficient Evidence Regarding The Weight Of The Alleged Drugs."
 SECOND ASSIGNMENT OF ERROR {¶ 14} "The Appellant's Conviction With Respect To The Weight Of The Alleged Drugs Is Against The Manifest Weight Of The Evidence."
 {¶ 15} In these assignments of error Defendant argues that the State failed to prove that he possessed any crack cocaine, since none was recovered, and that the weight of any such substance was mere speculation, since nothing was weighed or tested.
 {¶ 16} Defendant was found guilty of selling or offering to sell a controlled substance, crack cocaine, in an amount that equaled or exceeded ten grams but was less than twenty-five grams. R.C. 2925.03(A), (C)(4)(e). A person can "offer to sell" a controlled substance in violation of R.C. 2925.03(A) without possessing or transferring a controlled substance to the buyer. State v. Scott (1982),69 Ohio St.2d 439; State v. Bazzy (1993), 86 Ohio App.3d 546. A completed sale is not required; a mere offer to sell a controlled substance is sufficient to commit the offense. Id.
 {¶ 17} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 19} The informant, Tom Offinger, testified that on February 20, 2001, under Det. Elworth's supervision, he called Defendant and asked to buy one-half ounce of crack cocaine. Defendant said the price would be between five and six hundred dollars. When Offinger called Defendant back later that evening and said he had his money ready, Defendant said he'd be right over. Five minutes later Defendant arrived at Offinger's apartment and handed Offinger a baggie with what appeared to be a chunk of crack cocaine in it. The two men haggled over the amount of the cocaine, whether it was less than the one-half ounce Offinger had requested, and the price Defendant wanted, before Offinger gave the prearranged signal and police moved in to arrest Defendant. Det. Elworth testified that one-half ounce of crack cocaine weighs fourteen grams.
 {¶ 20} The testimony by the informant Offinger and Det. Elworth, if believed, is sufficient to prove that Defendant offered to sell a controlled substance in an amount between ten and twenty-five grams, and to convince the average mind of Defendant's guilt beyond a reasonable doubt. There is nothing inherently incredible about Offinger's testimony, and the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve.State v. DeHass (1967), 10 Ohio St.2d 230. Viewing the evidence in this case in a light most favorable to the State, a rational trier of facts could find all of the elements of trafficking in crack cocaine proven beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 21} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 22} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 23} Defendant argues that his conviction is against the manifest weight of the evidence because the jury lost its way in choosing to believe Offinger's version of the events rather than his version. As Defendant correctly points out, the State's case depended heavily upon the testimony by Offinger. According to Defendant, Offinger's testimony is not worthy of belief because he suffers from a bipolar disorder, is addicted to crack cocaine, has a lengthy record of felony convictions, supports himself by shoplifting goods from stores and then fencing them, and has worked as a paid informant on about thirty occasions for the Dayton police.
 {¶ 24} Offinger's previous felony convictions as well as his other misdeeds and character flaws were revealed to the jury, along with the fact that he was paid one hundred dollars for his participation in this case. Nevertheless, there is nothing inherently incredible or implausible in Offinger's version of these events. To the contrary, Offinger's testimony is corroborated in some respects by Det. Elworth's testimony.
 {¶ 25} In resolving conflicts in the evidence the trier of facts must determine the credibility of the witnesses and the weight to be given to their testimony. In that regard this court stated in State v.Lawson (August 22, 1997), Montgomery App. No. 16288:
 {¶ 26} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 27} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 28} The jury did not lose its way simply because it chose to believe Offinger instead of Defendant. In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 29} These assignments of error are overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 30} "Appellant Was Denied A Fair Trial Through Prosecutorial Misconduct."
 {¶ 31} Defendant contends that the State's failure to turn over audiotapes of phone conversations between this same informant, Offinger, and Defendant that occurred on December 27, 2000, relative to a police buy/bust operation that took place on that date and which resulted in Defendant's arrest but no subsequent charges being filed, constitutes a Brady violation that deprived him of due process of law. We disagree.
 {¶ 32} Suppression by the prosecution of evidence that is favorable to the accused and material either to guilt or punishment violates due process. Brady v. Maryland (1963), 373 U.S. 83. Evidence is "material" within the meaning of Brady only if there exists a reasonable probability that the result of the trial would have been different had the evidence been disclosed to the defense. Kyles v. Whitley (1995),514 U.S. 419, 433-434; United States v. Bagley (1985), 473 U.S. 667.
 {¶ 33} During cross-examination Det. Elworth testified that informant Offinger had previously attempted to set up a controlled buy of crack cocaine from Defendant on December 27, 2000. Defendant was arrested that day but no drugs were found, and no charges were filed. The phone calls between Offinger and Defendant on that date were recorded. According to Det. Elworth, those phone calls demonstrate that Defendant offered to sell Offinger one ounce of crack cocaine for one thousand dollars.
 {¶ 34} Defendant urged the trial court to sanction the State for a discovery violation because it failed to turn over the tapes of the December 27 phone conversations between Offinger and Defendant as Brady
material. The trial court ruled that the December 27 audiotapes were not relevant to the February 20, 2001 drug transaction involved in this case, because they are separate, unrelated incidents.
 {¶ 35} This record fails to demonstrate that the December 27 audiotapes contain Brady material: that is, evidence favorable to Defendant which is material to either guilt or punishment. The specific contents of those tapes was not disclosed. To counter the trial court's ruling that those tapes are not relevant because they concern a separate incident of drug activity unrelated to this case, Defendant suggests that those tapes might support his position that informant Offinger misled police in this case, just as he did on December 27, about whether Defendant is a drug dealer. That is pure speculation, however. The only information in this record relative to the contents of those tapes is Det. Elworth's testimony that they demonstrate an offer by Defendant to sell Offinger one ounce of crack cocaine for one thousand dollars. That is not exculpatory evidence favorable to Defendant.
 {¶ 36} Defendant has simply failed to demonstrate that the December 27 audiotapes contain any evidence favorable to him, much less a reasonable probability of a different outcome had those tapes been disclosed to the defense. No Brady violation has been demonstrated.
 {¶ 37} This assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 38} "Appellant Was Denied His Constitutional Right To Effective Assistance Of Counsel."
 {¶ 39} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth the standard for judging claims of ineffective assistance of trial counsel:
 {¶ 40} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 {¶ 41} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 42} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syllabus, 2. Accord: State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 43} Defendant testified in his own defense at trial. Defendant denied that he is a drug dealer or that he has ever sold drugs. Regarding the December 27, 2000 incident when police arrested Defendant for offering to sell crack cocaine to Offinger but the grand jury later refused to indict on that charge, Defendant testified that he refused the offer by police on that occasion to work as an informant because he doesn't sell drugs, he doesn't know anyone who does, and he has never possessed any drugs. On rebuttal, Det. Elworth testified that after Defendant was questioned after he was arrested on December 27, he admitted he was there at the scene for the purpose of selling crack cocaine.
 {¶ 44} Defendant argues that his trial counsel performed deficiently because he failed to request an instruction on the limited purpose for which the jury could consider evidence of his other crimes or bad acts, as related by Det. Elworth on rebuttal.
 {¶ 45} According to the State's theory, when Defendant testified that he has never sold or possessed any drugs, he was presenting evidence of his good character and asking the jury to infer that he did not commit this offense because he is not the type of person who engages in that kind of illegal activity. We have some doubts about the validity of the State's claim. A general denial of the offense, which is what Defendant's testimony was, is not the same as evidence of "good character." Nevertheless, Defendant does not challenge the State's theory or its claim that Det. Elworth's rebuttal testimony was admissible pursuant to Evid.R. 404(A)(1) to rebut Defendant's evidence of good character.
 {¶ 46} Instead, Defendant argues that because the trial court admitted Det. Elworth's rebuttal testimony regarding Defendant's other criminal acts to rebut Defendant's evidence of good character, Defendant was entitled to a jury instruction regarding the very limited purpose for which the jury could consider that evidence. According to Defendant, such an instruction was crucial in this credibility contest between him and the informant, Offinger, to prevent the jury from convicting Defendant for his previous crimes or bad acts of a similar nature. Therefore, his counsel's failure to request that limiting instruction constituted ineffective assistance.
 {¶ 47} The courts in Ohio have long recognized that evidence of other crimes, wrongs or bad acts carries the potential for the most virulent kind of prejudice for the accused. State v. Lewis (February 1, 1990), Greene App. Nos. 88-CA-91. That is even more true in a case such as this where the other acts involve conduct similar or identical to the offense charged. In cases where evidence has been admitted for a very limited purpose and that evidence tends to show that Defendant has committed other criminal acts, the jury should be instructed that such evidence must not be considered by them as proof that defendant committed the crime charged. Id; State v. Flonnory (1972), 31 Ohio St.2d 124. The limiting instruction should be given at the time the "other acts" evidence is received, Lewis, supra, and it has been held that the failure to give any limiting instruction constitutes plain error. State v.Crafton (1968), 15 Ohio App.2d 160.
 {¶ 48} While this court has recognized that a defendant is entitled to an appropriate instruction limiting the scope of a jury's consideration of potentially prejudicial evidence that is admitted for a very limited purpose, we have also recognized that a defendant may decide, as a matter of trial strategy, not to request a limiting instruction because of concerns that it will only emphasize in the juror's minds the evidence of other criminal acts committed by defendant to which the instruction applies, thereby reinforcing the prejudice.State v. McDaniel (August 19, 1992), Clark App. No. 2853. We need not decide in this case whether defense counsel's failure to request a limiting instruction was legitimate trial strategy, or constitutionally deficient performance. Assuming arguendo that counsel's failure to request a limiting instruction constitutes deficient performance, in view of the substantial evidence of Defendant's guilt there has been no showing of prejudice, as defined by Strickland, resulting from counsel's deficient performance.
 {¶ 49} The evidence of Defendant's guilt in this case includes the testimony by the informant Offinger that Defendant offered to sell him one-half ounce of crack cocaine, that Defendant had in his possession, between five and six hundred dollars. Police recorded the conversation between Offinger and Defendant during this drug transaction, and that tape was played for the jury. We have reviewed the tape, and find that its contents support the State's case that Defendant offered to sell crack cocaine. When Offinger then gave the prearranged signal and police moved in to arrest Defendant, he fled and led police on a lengthy high speed chase. That flight could be considered evidence of guilt. See,California v. Hodari (1991), 499 U.S. 621. During the chase, one of the police officers pursuing Defendant observed him throw a baggie of what appeared to the officer to be crack cocaine off the Ridge Avenue bridge into the river below. The reliability of the officer's conclusions was a matter for the jury to determine.
 {¶ 50} In view of this evidence of Defendant's guilt, we cannot say that there exists a reasonable probability that Defendant would have been acquitted had defense counsel requested a limiting instruction regarding the other acts evidence. Ineffective assistance of counsel has not been demonstrated on this record.
 {¶ 51} This assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and YOUNG, J., concur.