OPINION
{¶ 1} Defendant-appellant, Jerry M. Carroll ("Carroll"), appeals the denial of his motion to suppress evidence by the Lake County Court of Common Pleas. Following denial of his motion, Carroll pled no contest, and was convicted of one count of Possession of Cocaine, in violation of R.C. 2925.11. We affirm the judgment of the trial court. {¶ 2} On April 23, 2003, at approximately 8:04 p.m., the Painesville Police Department dispatcher received an anonymous phone call reporting that a young black male, in his late teens or early twenties, had just been observed selling what appeared to be rocks of crack cocaine to the occupants of a white pickup truck in the parking lot of the Argonne Arms apartments in Painesville, Ohio. The caller reported that the individual who was seen selling the drugs was wearing a black and gray coat, what appeared to be tie-dyed pants, and a blue and yellow "backward" baseball cap.
 {¶ 3} Within a few minutes of the phone call, Detective John Levicki ("Levicki"), a ten-year veteran of the Painesville Police Department, was dispatched to the area to investigate. Levicki, dressed in plain clothes and driving an unmarked vehicle, arrived at the scene shortly thereafter, and observed a young male, later identified as Carroll, on the sidewalk leading to one of the buildings nearest the entrance to the complex, wearing bleached out blue jeans, and a black and gray jacket. As Levicki drove past, with his window down, Carroll took a few steps toward Levicki's vehicle and said "what's up?" Levicki didn't acknowledge Carroll, but continued to drive, circling around the complex, to see if there were any other individuals who might also match the description he was given by the dispatcher. Not seeing any other individuals matching the description, Levicki returned to the area where he initially saw Carroll standing. Again, Carroll approached and asked, "whatcha need?" Levicki responded, "I don't know you. I don't know who you are. Anybody else around that might know you?" Carroll responded, "man, we all cool here." Levicki testified at the suppression hearing that it was common for individuals who purchased drugs to get them from one particular dealer that they "know," due to the risk of "getting beat up, robbed, whatever."
 {¶ 4} Levicki again decided to circle around the complex, because he did not want to seem too obvious. While he was circling the apartment complex, Levicki was maintaining intermittent radio contact with uniformed officers stationed nearby. Eventually, Levicki returned, and observed Carroll making his way across the lawn toward the curb near his vehicle. Levicki stopped the vehicle this time, and Carroll bent over and leaned into Levicki's open window and asked, "what you need?" Levicki responded, "what you got?" Carroll replied, "man, I got everything you need." Levicki then told Carroll that he would make another loop around the complex and come back.
 {¶ 5} While driving around the complex, Levicki contacted the other officers standing by and told them that he didn't have any money to flash, but that hopefully he could get Carroll to "put the rock out in front of me." Levicki then notified the other officers to be on standby.
 {¶ 6} As he completed his loop of the complex, Levicki then saw Carroll directing him toward the parking lot to one of the buildings. Levicki then made another circuit of the apartment complex, and parked his vehicle, facing out, in a space at the end of the lot. Carroll then approached Levicki's car from across the street, at which time Levicki raised two fingers. Levicki testified that this was a commonly-used street signal for purchasing either two rocks of crack cocaine or two blotters of LSD, but that LSD was not a drug commonly sold around Argonne Arms. When Levicki gave this "signal," Carroll immediately made a call on his cell phone, and continued walking toward the driver's side of Levicki's vehicle. Levicki did not hear the phone conversation, but as Carroll approached, Levicki heard someone yell to Carroll, "hey, dumb motherfucker, that's Levicki, a Painesville cop!"
 {¶ 7} Hearing this, a look of shock turning to disgust crossed Carroll's face and he turned and began walking in the opposite direction toward one of the buildings. Realizing that he had been identified as an officer, Levicki radioed for backup, exited the vehicle and approached Carroll, who was now sitting among a group of ten to fifteen people assembled at the front of one of the buildings. The group was laughing raucously at Carroll and mocking him for not knowing that Levicki was a police officer. As Levicki approached, Carroll stated defiantly, "You ain't got no case. I ain't got no dope."
 {¶ 8} Levicki approached Carroll and placed him under arrest for drug trafficking. When Levicki searched Carroll, he recovered a small baggie containing trace amounts of residue from Carroll's front pocket, which the Lake County Regional Forensic Laboratory later determined to be crack cocaine. When walking back to Levicki's vehicle, Carroll again repeatedly stated, "you ain't got no case. I ain't got no dope."
 {¶ 9} On June 25, 2003, the Lake County Grand Jury returned a two count indictment against Carroll, which included one charge of Trafficking in Drugs, a fifthdegree felony, in violation of R.C. 2925.03
and one charge of Possession of Cocaine, a fifth-degree felony, in violation of R.C. 2925.11. Carroll waived his right to be present at his arraignment and pleas of not guilty were entered on both charges.
 {¶ 10} On August 23, 2003, Carroll's defense attorney filed a Motion to Suppress evidence obtained as the result of Carroll's arrest, and the prosecution filed a brief in response. On September 15, 2003, the trial court held an oral hearing on Carroll's motion. The court entered judgment denying Carroll's motion on September 26, 2003. Carroll subsequently decided to change his plea to "no contest" on the possession charge, and the prosecution applied for a nolle prosequi with respect to the trafficking charge, which was granted by the trial court. The court then sentenced Carroll to three years of community control, including 90 days in the Lake County Jail, with credit for 22 days time served, along with a requirement that Carroll complete the Jail Treatment Program.
 {¶ 11} Carroll timely appeals, raising a single assignment of error:
 {¶ 12} "The trial court violated Mr. Carroll's right to (sic) unreasonable search and seizure under Section 14, Article I of the Ohio Constitution and the Fourth and Fourteenth Amendments to the United States Constitution."
 {¶ 13} Article I, Section 14 of the Ohio Constitution and the Fourth
Amendment of the United States Constitution provide that "[t]he right of the people to be secure * * * against unreasonable searches and seizures, shall not be violated * * *." The Fourth Amendment is enforceable against the states through the Due Process Clause of theFourteenth Amendment. Mapp v. Ohio (1961), 367 U.S. 643, 655. Reasonableness relies on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." United States v. Brignoni-Ponce (1975), 422 U.S. 873,878.
 {¶ 14} Carroll attacks the trial court's refusal to grant his motion to suppress on two related fronts. First, Carroll argues that his constitutional rights were violated because the police did not demonstrate "specific, articulable facts upon which to base a search, * * * since [Carroll] did not offer to sell drugs." Carroll next challenges his arrest on the basis that Levicki lacked probable cause to believe that Carroll was about to sell drugs.
 {¶ 15} The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses.State v. Hill, 75 Ohio St.3d 195, 208, 1996-Ohio-222; State v. Mills (1992), 62 Ohio St.3d 357, 366. Thus, an appellate court is bound to accept the trial court's factual determinations as long as they are supported by competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741; State v. Guysinger (1993),86 Ohio App.3d 592, 594; State v. Klein (1991), 73 Ohio App.3d 486,488. If there is competent and credible evidence supporting the trial court's factual determinations, an appellate court conducts a de novo review of the trial court's application of the law to these facts.Searls, 118 Ohio App.3d at 741.
 {¶ 16} Our review of the record reveals that the trial court found that Carroll was not searched until after Levicki placed him under custodial arrest. In fact, the evidence is uncontroverted that it was Carroll who continually approached Levicki up until the time when Levicki approached him to make the arrest. Therefore, Levicki's search of Carroll is constitutional as a search incident to an arrest, provided Levicki had probable cause to arrest Carroll. Chimel v. California (1969), 395 U.S. 752,762-763.
 {¶ 17} The standard for probable cause to arrest is whether at the moment the arrest was made, the facts and circumstances within the officer's knowledge and supported by reasonably trustworthy information, were "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio (1964),379 U.S. 89, 91; Gerstein v. Pugh (1975), 420 U.S. 103, 111; State v.Tibbetts, 92 Ohio St.3d 146, 153, 2001-Ohio-132. Probable cause is incapable of precise definition and depends upon the totality of the circumstances. Maryland v. Pringle (2003), 540 U.S. 366, 371 (citations omitted).
 {¶ 18} Thus, we first need to determine whether there was competent and credible evidence available at the time of Carroll's arrest to support a finding of probable cause that Carroll either possessed or was attempting to sell drugs. We conclude, under the totality of the facts and circumstances, that Levicki had probable cause to arrest Carroll.
 {¶ 19} The trial court made the following findings of fact, based upon the testimony adduced at the suppression hearing, a tape of the dispatch phone call and a tape of police radio transmissions, to which both parties stipulated: that Carroll matched the general description of the individual identified in the dispatch; that Levicki had been a law enforcement officer for 17 years, and had extensive experience and training in drug enforcement; that Levicki was familiar with the conduct of drug transactions, including those in which drug dealers flag down and solicit motorists for the purpose of selling drugs; that Levicki was familiar with the "lingo" for illegal drug transactions, including "motions, knocks and conduct"; that the Argonne Arms apartment complex was well-known by police as a high-crime and drug area; that Carroll immediately and repeatedly approached Levicki's vehicle after Levicki's arrival at Argonne Arms; that after several encounters, Levicki, based upon his experience in drug enforcement, understood Carroll's words and actions to mean that he was soliciting a sale of drugs; that based upon Levicki's training and experience in drug enforcement, it was understood that the signal of raising two fingers meant that Levicki desired to purchase two rocks of crack cocaine, and that Carroll immediately got on his cell phone and approached the car once he saw Levicki's signal. The court also considered Carroll's reaction of abruptly walking away upon learning that Levicki was an officer; the fact that the crowd was laughing at Carroll and mocking him openly for trying to "sell to a cop", and Carroll's statements as Levicki approached to arrest him.
 {¶ 20} Since the trial court's factual determinations are supported by competent and credible evidence, we are bound to accept these factual findings as accurate. Based upon the totality of the facts and circumstances, we find that Levicki had probable cause to arrest Carroll for trafficking in drugs.
 {¶ 21} Relying on Florida v. J.L. (2000), 529 U.S. 266, Carroll makes much of the fact that "something more than an anonymous tip is required to provide the reasonable suspicion to make a valid stop of a person suspected of criminal activity." Carroll's reliance on the J.L. case is misplaced.
 {¶ 22} The tape made by the police of the anonymous informant's phone call, which was admitted and played at the suppression hearing, makes it clear that the anonymous caller was calling the police because she didn't want drug sales taking place around her children. Courts in Ohio have held that "[i]n the case of a citizeninformant who is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informer is reliable." Statev. Shepherd, (1997) 122 Ohio App.3d 358, 366 (citations omitted). Even if we were to presume that the anonymous tip was unreliable, Levicki, unlike the police officer in J.L., relied on much more than an informant's anonymous tip prior to making the arrest and search. Carroll repeatedly approached Levicki and offered to sell him drugs. Carroll specifically directed Levicki to an area of the parking lot meant to facilitate the transaction. Carroll immediately broke off contact with Levicki upon learning that he was a police officer. Carroll's conduct alone provided Levicki ample basis for probable cause to arrest even without the anonymous informant's tip.
 {¶ 23} Carroll further argues that Levicki failed to establish probable cause because the language he used in speaking with Levicki was completely ambiguous, there was no completed transaction between them, and the search revealed that Carroll did not have any drugs on his person to sell. These arguments are without merit.
 {¶ 24} With respect to inferences made by an officer based on his observations of an individual suspected of criminal activity, "[a] court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." State v. Andrews (1991), 57 Ohio St.3d 86, 88, citingUnited States v. Cortez, (1981) 449 U.S. 411, 418. Particularly in the context of a street drug transaction, precise terms to describe the transaction or the merchandise are not required in order to determine whether an offer to sell has in fact been made. State v. Bazzy (1993),86 Ohio App.3d 546, 548-549. Rather, the totality of the circumstances and the language is determinative. Id.; accord State v.Clark, 11th Dist. No. 2001-A-0048, 2002-Ohio-2949, at ¶ 19 (the totality of the circumstances, including dialogue and course of conduct are all relevant to establishing the willingness to sell a controlled substance); see also, Texas v. Brown (1983), 460 U.S. 730, 746 ("a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person"). In the instant matter, we find that the trial court properly accepted Levicki's interpretations of the events in question, based upon his vast experience with drug interdiction.
 {¶ 25} Carroll's next argument, that there was no completed transaction, and therefore, no probable cause to arrest him for trafficking, is specious.
 {¶ 26} R.C. 2925.03(A)(1), by its own terms states that "[n]o person shall knowingly * * * sell or offer to sell a controlled substance." (Emphasis added). In Ohio, there is no requirement that a controlled substance actually be transferred for R.C. 2925.03 to be violated. Statev. Scott (1982), 69 Ohio St.2d 439, 440; Clark, 2002-Ohio-2949, at ¶ 20; State v. Beamon, 11th Dist. No. 2000-L-028, 2001-Ohio-7071, 2001 Ohio App. LEXIS 5647, at *13. By the same token, it is not a requirement that the accused actually possess the drugs being offered for sale, if there are other facts pointing to the accused's willingness to sell. SeeBeamon, 2001 Ohio App. LEXIS 5647, at *14; Scott, 69 Ohio St. 2d at 440
n. 2, citing State v. Mosley (1977), 55 Ohio App.2d 178, 183. As we have indicated previously, Carroll repeatedly approached Levicki in a way that Levicki, with his experience in drug enforcement, readily understood as an offer to sell drugs.
 {¶ 27} We therefore find, based upon the totality of the circumstances, that Levicki had probable cause to arrest Carroll for drug trafficking. The search was therefore constitutionally valid, and the small amount of crack cocaine recovered as a result of Carroll's arrest could properly be used as evidence to convict him for possession of cocaine under R.C. 2925.11. Carroll's sole assignment of error is without merit. We affirm the judgment of the Lake County Court of Common Pleas.
Ford, P.J., Rice, J., concur.