OPINION
{¶ 1} Defendant-appellant, Richard Foster, appeals the judgment of the Portage County Court of Common Pleas, convicting him of three separate counts of Trafficking in Drugs, and sentencing him to six months in prison on each count, to run concurrently. We affirm the judgments of conviction and sentence.
 {¶ 2} The charges against Foster arose from three separate controlled buys which occurred over the months of March and April of 2004. Prior to March of 2004, Kari Heldman became aware that Foster was selling his prescription medications. Heldman, whose daughter and grandchildren live with Foster, was concerned that this activity might be occurring around her grandchildren, and contacted Foster's pharmacy to report this information. The pharmacy directed Heldman to contact the Western Portage County Drug Task Force. After meeting with Agent Joan Bauer of the Task Force, Heldman agreed to work with Bauer as a confidential informant, for which Heldman was paid $250 for her participation.
 {¶ 3} Pursuant to her arrangement with the Task Force, Heldman agreed to contact Foster to inquire whether he would be willing to sell his prescriptions to a friend of hers. Foster agreed.
 {¶ 4} On March 4, 2004, Heldman called Foster. During their conversation, Foster told Heldman that he had a prescription for Vicodin (Hydrocodone) that he would be willing to sell. Heldman asked him how many tablets he had to sell, whether they were the strongest available, and how much he would charge. Foster told Heldman that he had thirty of the "strongest" available, and would sell them for three dollars a pill. Based upon this information, Heldman called Agent Bauer, and arranged a meeting. Heldman then drove Foster to the Marc's Pharmacy in Ravenna. Foster went inside, and returned to Heldman's car with the prescription. Agent Bauer arrived in an undercover vehicle and parked next to Heldman's car.
 {¶ 5} When Foster returned, Agent Bauer joined Foster and Heldman in Heldman's car. Agent Bauer asked Foster whether the Vicodin was extra strength. Upon Fosters' confirmation that it was, Agent Bauer counted out ninety dollars and handed it to Foster in exchange for the unopened prescription bottle. Agent Bauer asked Foster how often he gets the pills, and Foster explained that he gets a prescription once a week, since he is on dialysis and the medication is for his pain. Agent Bauer then asked if Foster was in pain and if he had any need for the prescriptions. Foster replied that he was not in pain and the prescriptions were just "given to him." Agent Bauer expressed an interest in purchasing additional prescriptions from Foster. Foster replied that he would be getting an additional prescription the following week, which he would sell to the highest bidder. Agent Bauer gave Foster her pager number so that he could contact her.
 {¶ 6} On March 10, 2004, Agent Bauer received a call from Heldman informing her that Foster had a prescription for fifty Darvocet tablets, which he was willing to sell for seventy-five dollars. Arrangements were made for Agent Bauer to meet Heldman and Foster in the parking lot of the Discount Drug Mart store located in Kent, Ohio, where Foster gave Bauer the bottle of Darvocet tablets in exchange for seventy-five dollars. Foster told Agent Bauer that he had lost her pager number, and requested it again. Foster also told Agent Bauer that expected to go to the doctor within the next "couple of weeks" and he would be receiving additional prescriptions following his doctor's visit.
 {¶ 7} On March 16, 2004, Foster paged Agent Bauer. Upon returning the call, Agent Bauer learned that Foster had more Darvocet for sale. Agent Bauer told Foster that she was not interested in more Darvocet, but would be interested in more Vicodin when he had some available. Foster said he was expecting to see the doctor the next day, and that he would page Agent Bauer when he had more Vicodin available.
 {¶ 8} On April 5, 2004, Agent Bauer received two calls from Foster on her pager. Agent Bauer called Foster and learned he had thirty-five extra strength Vicodin tablets that he was willing to sell for three dollars a pill. Foster and Agent Bauer arranged to meet. Foster stated that he would be walking on Lovers Lane near Robinson Memorial Hospital, in Ravenna, Ohio, and described to Bauer what clothes he would be wearing. Agent Bauer agreed she would pick Foster up and take him to the parking lot of the nearby Sheetz gas station, where they would complete the transaction.
 {¶ 9} At approximately 11:00 a.m., Agent Bauer was driving along Lovers Lane in her undercover vehicle, and observed Foster walking down the street. She stopped, and Foster entered the vehicle. Upon arrival at the Sheetz station, Foster produced a plastic bag containing 35 Vicodin tablets and told Agent Bauer he would have an additional ten to sell the next day. Officer Bauer exchanged $105 for the pills. Foster then exited the vehicle and entered the gas station to make a purchase. Officer Bauer called in uniformed officers who were working as backup, and they effectuated Foster's arrest for trafficking. Pursuant to a search incident to his arrest, police officers recovered a crack pipe from Foster, as well as ninety-nine dollars, eighty-five of which was found to be marked drug buy money.
 {¶ 10} On May 5, 2004, the Portage County Grand Jury indicted Foster on three counts of trafficking in drugs. Count One corresponded with the March 4, 2004 sale, and charged Foster with Trafficking in Drugs (Hydrocodone), a Schedule III controlled substance, in an amount exceeding the bulk amount, a fourth degree felony, in violation of R.C. 2925.03(A) and (C)(2)(c). Count Two corresponded with the March 10, 2004 sale, and charged Foster with Trafficking in Drugs (Darvocet), a Schedule IV controlled substance, a fifth degree felony, in violation of R.C. 2925.03(A) and (C)(2)(a). Count Three corresponded with the April 5, 2004 sale, and charged Foster with Trafficking in Drugs (Hydrocodone), in an amount exceeding the bulk amount, a fourth degree felony, in violation of R.C. 2925.03(A) and (C)(2)(c).
 {¶ 11} On July 16, 2004, Foster filed a motion to suppress evidence, related to statements he made to police while in custody. On August 16, 2004, following a hearing, the court overruled this motion. On August 27, 2004, Foster filed a motion in limine, requesting that any evidence of Foster's use of crack cocaine be excluded at trial, which was overruled.
 {¶ 12} On September 2, 2004, the matter proceeded to trial. Following a three day trial, the jury found Foster guilty on all three counts. With respect to Counts Two and Three, the jury found Foster guilty as charged. However, with respect to Count One, the jury found Foster guilty of the lesser offense of Trafficking in Hydrocodone, finding that the amount Foster sold was equal to or less than the bulk amount.
 {¶ 13} On September 20, 2004, Foster filed a Motion for Judgment of Acquittal, notwithstanding the jury verdict, pursuant to Crim. R. 29(C).
 {¶ 14} On November 1, 2004, the court denied Foster's Motion for Judgment of Acquittal, and held a sentencing hearing. Foster was sentenced to six months imprisonment on each count, to be served concurrently. Foster timely appealed his conviction and sentence. Pursuant to Foster's motion, the court stayed execution of his sentence pending this appeal.
 {¶ 15} On appeal, Foster asserts six assigned errors:
 {¶ 16} "[1.] The trial court erred in denying defendant's motion for judgment of acquittal notwithstanding the verdict.
 {¶ 17} "[2.] The trial court erred in denying defendant's motion for acquittal at the conclusion of the [s]tate's case in chief.
 {¶ 18} "[3.] The trial court erred in denying defendant's motion to suppress.
 {¶ 19} "[4.] The trial court erred in allowing a lab analyst to state a legal conclusion as to what constitutes the `bulk amount' of a substance when said conclusion is unsubstantiated by facts offered into evidence.
 {¶ 20} "[5.] The trial court erred to the prejudice of the defendant in allowing the admission of evidence that the defendant smoked crack cocaine.
 {¶ 21} "[6.] The trial court's sentence was contrary to law in that it does not comport with the overriding purposes of felony sentencing and violates R.C. 2929.13(A)[,] which provides that a sentence should impose no unnecessary burden on government resources."
 {¶ 22} For the purposes of clarity, Foster's assignments of error will be discussed out of order.
 {¶ 23} Since Foster's first and second assignments of error make identical arguments, and since Foster's fourth assignment of error has implications related to Foster's second assignment of error, they will be discussed together.
 {¶ 24} In his first assignment of error, Foster argues that there was insufficient evidence to convict him on Counts One and Three. Specifically, Foster argues that the State failed to prove beyond a reasonable doubt that the defendant sold greater than the bulk amount in Count Three, and that the State failed to prove beyond a reasonable doubt that the substance Foster sold in Count One was hydrocodone. For the same reasons, Foster maintains, in his second assignment of error, that his convictions on Counts One and Three were against the manifest weight of the evidence. We disagree.
 {¶ 25} Sufficiency of the evidence and manifest weight of the evidence are distinct concepts. A challenge to the sufficiency of the evidence raises a question of law; thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." Id. The relevant inquiry when testing the sufficiency of the evidence is whether, after reviewing the evidence and the inferences drawn from it in the light most favorable to the prosecution, any rational trier of fact could find all elements of the offense proven beyond a reasonable doubt. State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citingState v. Jones, 91 Ohio St.3d 335, 345, 2001-Ohio-57.
 {¶ 26} On the other hand, manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. "[T]he weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, at syllabus.
 {¶ 27} R.C. 2925.03 provides that:
 {¶ 28} "(A) No person shall knowingly * * *
 {¶ 29} "(1) Sell or offer to sell a controlled substance;
 {¶ 30} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 31} "(2) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule III, IV, or V, whoever violates division (A) of this section is guilty of trafficking in drugs."
 {¶ 32} As mentioned earlier, Hydrocodone compounds in tablet form are considered schedule III controlled substances and Darvocet is a schedule IV controlled substance. Neither party disputes this fact. Foster's appeal apparently does not challenge his conviction on Count Two, for the sale of Darvocet. Instead, Foster elects to challenge his convictions on Counts One and Three only.
 {¶ 33} With respect to his conviction on Count One, Foster argues, based upon the testimony of the laboratory analyst, that there was insufficient evidence for the jury to convict him for the sale of hydrocodone, since the identification of the substance was based on "pharmaceutical markings," and not a chemical analysis of the substance. Foster also challenges the jury's finding that the hydrocodone sold exceeded the bulk amount. These arguments are specious.
 {¶ 34} Contrary to Foster's assertions, the jury found him guilty only of a fifth degree felony, finding that the state failed to prove beyond a reasonable doubt that the amount of hydrocodone involved in the first sale was greater than the bulk amount. Thus, viewing the evidence in the light most favorable to the prosecution, the State, in order to survive a sufficiency of the evidence challenge with respect to Count One, only needed to prove that Foster knowingly sold, or offered to sell, hydrocodone, a schedule III controlled substance, in Portage County, Ohio, on March 4, 2004.
 {¶ 35} Testimony from Agent Bauer clearly showed that on March 4, 2004, Foster knowingly sold or attempted to sell a prescription bottle containing thirty pills, which he represented as extra-strength Vicodin (hydrocodone) to Agent Bauer for ninety dollars in the parking lot of the Marc's Pharmacy in Ravenna, Ohio.
 {¶ 36} These tablets were then submitted to Bureau of Criminal Identification (BCI) for chemical analysis. The State offered testimony from Agent Bauer identifying the particular prescription bottle and its contents as those which were involved in the March 4, 2004 sale. The State also offered testimony from Laura Risdon, of the BCI. Risdon testified that in addition to identifying the drugs as hydrocodone by the pharmaceutical markings on the tablets, some of the tablets were placed in a vial and analyzed by a gas chromatograph mass spectrometer.
 {¶ 37} Even if Risdon had identified the tablets only by their pharmaceutical markings, there was sufficient evidence, as a matter of law to convict Foster of the fifth-degree felony of trafficking in hydrocodone, since the statute prohibits "offers to sell." There is no requirement that the controlled substance actually transfer between parties, nor is the accused required to possess the controlled substance, as long as there are other facts and circumstances which indicate a willingness to sell. State v. Carroll, 11th Dist. No. 2003-L-212,2005-Ohio-3093, at ¶ 26; see also, State v. Mosley (1977),55 Ohio App.2d 178 (an offer to sell a prohibited substance, even if the substance actually sold is later found to be counterfeit is a violation of R.C. 2925.03). Based upon the testimony of Agent Bauer, we cannot find, as a matter of law, that the jury lost its way or committed a manifest miscarriage of justice in convicting Foster for the sale of hydrocodone in less than the bulk amount in Count One.
 {¶ 38} With respect to Foster's conviction for Count Three, R.C. 2925.03(C)(2)(a)-(e) determines the penalties to be imposed for trafficking in schedule III, IV or V substances, based upon the amount of the drug sold. R.C. 2925.03(C)(2)(c) states, "if the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, trafficking in drugs is a felony of the fourth degree, and there is a presumption for a prison term for the offense." Thus, in addition to the aforementioned elements, the state must also prove that the amount of hydrocodone sold was in excess of the bulk amount, to convict Foster of the greater offense. State v. Reed (1985),23 Ohio App.3d 119, at paragraph three of the syllabus ("[W]hen an additional element raises an offense to a more serious (greater) degree, a guilty verdict constitutes a finding of guilty of the least degree of the least degree charged, unless the verdict states * * * the presence of the additional element").
 {¶ 39} Regarding his conviction on Count Three, testimony from Agent Bauer showed that on April 4, 2004, Foster knowingly sold or attempted to sell 35 Vicodin (hydrocodone) tablets for $105 in Ravenna, Ohio. Therefore, the first three elements of the offense are satisfied. At trial, Agent Bauer testified as to the circumstances surrounding the April 5, 2005 transaction, identified the pills contained in the baggie as those that Foster sold her, based upon the markings, and established the chain of custody. In addition, Agent Bauer identified the money used in this controlled buy. Thus, at a minimum, the state again presented sufficient evidence, which would support a conviction for the fifth-degree felony. However, since Foster was convicted of selling an amount greater than the bulk amount, we must examine if there was sufficient evidence to establish that the amount of hydrocodone sold in Count Three was greater than the bulk amount, as defined by the statute.
 {¶ 40} In Foster's fourth assignment of error, he argues that the trial court erred by allowing laboratory analysts to state a "legal conclusion" as to what constitutes a bulk amount of a controlled substance. Foster argues that since Ohio law does not recognize "counting pills" as a method of determining bulk amount, the testimony from the laboratory analyst as to the number of pills that would constitute the bulk amount, without reference to a standard pharmaceutical reference manual, to determine the maximum daily dose, was prejudicial error. While we agree with Foster that the evidence failed to establish bulk amount by means of reference to a standard pharmaceutical reference manual, the State nevertheless introduced sufficient evidence to establish that Foster sold hydrocodone in excess of the bulk amount by other valid means.
 {¶ 41} A ruling as to the admission or exclusion of expert testimony is within the broad discretion of the trial court, and the trial court's ruling on the admission of such testimony will not be disturbed absent an abuse of that discretion. State v. Rhodes, 11th Dist. No. 2000-L-089, 2001-Ohio-8693, 2001 Ohio App. LEXIS 5650, at *4 (citation omitted). An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169
(citation omitted).
 {¶ 42} While the definition of "bulk amount" under 2925.01 is a matter of law, "the questions of whether a substance seized from an accused is a drug of abuse and whether it exceeds the bulk amount are questions of fact" to which a competent expert is qualified to testify. State v.Montgomery (1984), 17 Ohio App.3d 258, 260.
 {¶ 43} Testimony adduced at trial indicated that the tablets sold by Foster in Count Three were chemically analyzed and found to contain a mixture of hydrocodone and acetaminophen.
 {¶ 44} Foster maintains that R.C. 2925.01(D)(2) controls the determination of the bulk amount of hydrocodone under Schedule III. Under R.C. 2925.01(D)(2), bulk amount is defined as "[a]n amount equal to or exceeding one hundred twenty grams or thirty times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual * * * that is or contains any amount of a schedule III or IV substance other than an anabolic steroid or schedule III opiate or opium derivative." R.C. 2925.01(D)(2) (emphasis added).
 {¶ 45} An analysis of the relevant statues indicates that hydrocodone is listed under Schedule II (A)(1)(k) of R.C. 3719.41 under the heading "Narcotics — opium and opium derivatives." Under Schedule III (D)(1)(d) of R.C. 3719.41, hydrocodone is listed under the heading "Narcotics — narcotic preparations," when combined with "one or more active, nonnarcotic ingredients," such as acetaminophen. Since statutes related to similar subject matter are to be read in pari materia, Johnson'sMarkets, Inc. v. New Carlisle Dept. of Health (1991), 58 Ohio St.3d 28, 35, it becomes clear that the legislature classifies hydrocodone as an opiate or opium derivative.
 {¶ 46} R.C. 2925.01(D)(3) defines bulk amount for a "compound, mixture, preparation, or substance that is or contains any amount of aschedule III opiate or opium derivative," as "[a]n amount equal to or exceeding twenty grams or five times the maximum daily dose range specified in a standard pharmaceutical reference manual." (Emphasis added).
 {¶ 47} Therefore, the State has the option of proving Foster sold the bulk amount by either weight or by reference to the maximum daily dosage. State v. Mattox (1983), 13 Ohio App.3d 52, 53, citing Statev. Howell (1981), 5 Ohio App.3d 92 (the use of the disjunctive "or" between the weight description and the dosage description in R.C. 2925.01
requires the state to prove either weight or dosage in determining whether the controlled substance was in excess of the bulk amount, but not both).
 {¶ 48} Brooklyn Riordan, a laboratory analyst with BCI, testified, in relevant part. that "there were 35 tablets weighing 22.46 grams * * * found to contain hydrocodone." Our review of the record indicates that while the State did not refer to a standard pharmaceutical reference manual in establishing the bulk amount, the state was not required to do so. Riordan's testimony that the hydrocodone pills weighed 22.46 grams, was sufficient to establish that the hydrocodone sold exceeded the bulk amount of 20 grams. Thus, we cannot find that Foster's conviction on Count Three was against the manifest weight of the evidence.
 {¶ 49} Foster's first, second and fourth assignments of error are without merit.
 {¶ 50} In his third assignment of error, Foster claims the trial court erred by denying his motion to suppress, since police comments made during custodial interrogation were designed solely to induce Foster into making incriminating statements and, therefore, Foster's statements were involuntary and inadmissible as a matter of law. We disagree.
 {¶ 51} The United States Supreme Court, in Miranda v. Arizona (1966),384 U.S. 436, 444, held that the prosecution may not use statements stemming from custodial interrogation, unless it demonstrates that procedural safeguards were taken to secure the defendant's privilege against self-incrimination. Among these safeguards are the Miranda
warning, the right to end questioning at any time until an attorney is obtained, and an intelligent, knowing and voluntary waiver of this privilege. Id. The safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest." Berkemer v. McCarty (1984), 468 U.S. 420,440 (citation omitted).
 {¶ 52} In determining the voluntary nature of a waiver of Miranda
rights, a reviewing court will look at the "totality of the circumstances." State v. Gumm, 73 Ohio St.3d 413, 429, 1995-Ohio-24. In deciding whether a defendant's statement is voluntary, the trial court should consider factors including, "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Worley, 11th Dist. No. 2001-T-0048, 2002-Ohio-4516, at ¶ 161. Furthermore, "[a] suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey (1990),53 Ohio St.3d 88, paragraph two of the syllabus.
 {¶ 53} A review of the record before us indicates that Foster signed and initialed a written Miranda warning form, acknowledging all of his rights prior to questioning and signed and initialed written statements, which indicated that he both understood his rights, and, "having those rights in mind," wished to talk with police. We have no evidence before us that Foster did not understand his rights, that he was subject to a lengthy interrogation, that he was somehow physically deprived or mistreated, or that he was threatened into confessing. All we have is evidence of Officer Paul Fafrak's comment that he wondered if Foster was one of those "big wheeling" guys he needed to worry about.
 {¶ 54} Even if we were to accept this comment as an implied promise of leniency, in the absence of other evidence of coercion, a promise of leniency is insufficient, as a matter of law, to render a suspect's statements involuntary under a "totality of the circumstances" analysis.State v. Edwards (1976), 49 Ohio St.2d 40, 41. Foster's third assignment of error is without merit.
 {¶ 55} In his fifth assignment of error, Foster argues that the trial court allowing testimony related to his crack cocaine use was inadmissible "other acts" evidence under Evid. R. 404.
 {¶ 56} The admission or exclusion of evidence, including the admission of other acts evidence, lies within the trial court's sound discretion.State v. Bey, 85 Ohio St.3d 487, 490, 1999-Ohio-283.
 {¶ 57} Under Evid. R. 404(B), "[e]vidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity. State v. Wogenstahl, 75 Ohio St.3d 344, 366, 1996-Ohio-219. While "other acts" evidence may not be used to prove criminal propensity, such evidence may be admissible "if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v.Lowe, 69 Ohio St.3d 527, 530, 1994-Ohio-345.
 {¶ 58} Our review of the record indicates that Officer Jeffrey Wallis testified that he recovered a crack pipe from Foster's pocket while effectuating the April 5, 2004 arrest. In addition, there is evidence that a videotape was played for the jury in which Foster admitted that he used crack cocaine. The record also shows that defense counsel objected to the admission of these statements into evidence.
 {¶ 59} Although we agree that the trial court abused its discretion by admitting this other acts evidence at trial, we hold that, under the circumstances of this case, the admission of the "other acts" evidence was harmless error. The Supreme Court of Ohio has held that, "[w]here evidence has been improperly admitted * * * the admission is harmless `beyond a reasonable doubt' if the remaining evidence compromises `overwhelming' proof of defendant's guilt." State v. Sage (1987),31 Ohio St.3d 173, 181 (citation omitted). Here, there was overwhelming proof that Foster committed the acts for which he was charged. Foster's fifth assignment of error is without merit.
 {¶ 60} In his sixth assignment of error Foster argues that the trial court's sentencing was contrary to the terms of R.C. 2929.13(A), because he has no kidneys, requires dialysis three days a week, is on the national waiting list for a kidney transplant, and must be able to send a blood sample to Akron City Hospital on a monthly basis to maintain a spot on the donor list. Foster maintains that all of these medical problems will place an undue burden on state and local government resources, which is prohibited by the terms of R.C. 2929.13(A). We disagree.
 {¶ 61} An appellate court reviews a felony sentence under a clear and convincing evidence standard of review. R.C. 2953.08(G)(2). Accordingly, an appellate court may not disturb a sentence unless the court "clearly and convincingly finds" that "the record does not support the sentencing court's findings," or that "the sentence is otherwise contrary to law." R.C. 2953.03(G)(2)(a) and (b). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 62} "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). Consistent with the purposes and principles of felony sentencing, R.C. 2929.12(A) requires the trial court, in the exercise of its discretion, to consider all factors related to the seriousness of the offender's conduct, the likelihood of the offender's recidivism, and "any other factors that are relevant to achieving those purposes and principles of sentencing."
 {¶ 63} R.C. 2929.13(A) states in relevant part that, "Except asprovided in division (E) * * * of this section and unless a specific sanction is required to be imposed or is precluded from being imposed pursuant to law, a court that imposes sentence upon an offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in sections 2929.14 to 2929.18 of the Revised Code. The sentence shall not impose an unnecessary burden on state or local government resources." (Emphasis added).
 {¶ 64} R.C. 2929.13(E)(1) provides that "[f]or any drug offense that is a violation of any provision of Chapter 2925. of the Revised Code and that is a felony of the third, fourth, or fifth degree, the applicability of a presumption under division (D) of this section in favor of a prison term or of division (B) or (C) of this section in determining whether to impose a prison term for the offense shall be determined as specified in section * * * 2925.03 * * * of the Revised Code * * *." As mentioned earlier, the terms of R.C. 2925.03(C)(2)(c) carry a presumption of prison for trafficking in a schedule III controlled substance in excess of the bulk amount. Thus, Foster's conviction for Count Three carries a presumption of prison.
 {¶ 65} Under the terms of R.C. 2929.14(A)(4), the prescribed sentencing range for a fourth degree felony is six to eighteen months. For a felony of the fifth degree, the prescribed sentencing range is six to twelve months. R.C. 2929.14(A)(5). Here, the trial court sentenced Foster to six months on each count, to be served concurrently, which is the minimum amount of time that could be imposed based upon the aforementioned presumption.
 {¶ 66} Our review of the record indicates that the trial court considered the seriousness and recidivism factors of R.C. 2929.12, and specifically found that while the court was sympathetic to Foster's medical condition and considered this as a factor in sentencing, based upon Foster's prior felony convictions, the court could not find "that the non-recidivism factors outweigh the recidivism factors." Though R.C. 2929.13(A) fails to give any guidance as to what constitutes an "unnecessary burden," courts in Ohio that have addressed the issue have consistently held that the resource conservation principle does not override the seriousness and recidivism factors of R.C. 2929.12. Statev. Parker, 2nd Dist. No. 03CA0017, 2004-Ohio-1313, at ¶ 49; State v.Ober (Oct. 10, 1997), 2nd Dist. No. 97 CA 0019, 1997 Ohio App. LEXIS 4544, at *9-*10; State v. Fox, 3rd Dist. No. 16-2000-17, 2001-Ohio-2116, 2001 Ohio App. LEXIS 795, at *11; State v. Enyart (Apr. 16, 2001), 5th Dist. No. 00-CA-28, 2001 Ohio App. LEXIS 1846, at *25. Accordingly, Foster's sixth assignment of error is without merit.
 {¶ 67} We affirm the judgment of the Portage County Court of Common Pleas.
O'Neill, J., Rice, J., concur.