[Cite as *State v. Vaughn*, 2019-Ohio-1026.]

# IN THE COURT OF APPEALS OF OHIO
# SECOND APPELLATE DISTRICT
# CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-31 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-567 |
| | : | and 2018-CR-005 |
| SEAN VAUGHN | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of March, 2019.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 W. Monument Avenue, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Sean Vaughn appeals from his convictions for having weapons under disability and two counts of aggravated possession of drugs. For the reasons set forth below, we affirm Vaughn's convictions for having weapons under disability and for one count on aggravated possession of drugs. However, we vacate the second conviction for aggravated possession of drugs. We remand this matter to the trial court for the purpose of filing a judgment entry consistent with this opinion.

## I. Facts and Procedural History

{¶ 2} During a traffic stop, a handgun and a Crown Royal bag containing money and 35 tablets were found in the vehicle. Vaughn, a passenger in the vehicle, admitted the weapon and drugs belonged to him. A criminal-history search revealed that Vaughn had a prior felony conviction for drug trafficking. Eighteen (18) of the tablets contained a pharmaceutical marking "M367," and the remainder were marked "M365." Chemical testing of one of the "M367" tablets showed that it contained a Schedule II controlled substance, hydrocodone. Vaughn was indicted on two counts of aggravated possession of drugs (one for each set of tablets) and one count of having weapons under disability. The case was tried to a jury.

{¶ 3} At the trial, Detective Ronald Jordan of the Springfield Police Division testified. He said that Vaughn admitted to him that the handgun and tablets found in the vehicle were his. Detective Jordan also testified that he checked to see if Vaughn had a criminal history by searching Ohio's LEADS[1] database using Vaughn's name, birthdate,

---

[1] LEADS stands for law enforcement automated data system, "the statewide

and social security number. The State then presented a printout of Vaughn's criminal history, State's Exhibit 11, which Detective Jordan identified as a computerized criminal history (CCH) from the Ohio Bureau of Criminal Investigation and Identification.[2] According to the CCH printout, in 2002, "Sean Robert Vaughn," born December 2, 1980, was convicted of felony drug trafficking in Logan County, Ohio, in Case Number "CR03020024-1." Vaughn objected to the CCH printout and to Detective Jordan's testimony about it. He argued that the printout contained hearsay and did not fall under the Evid.R. 803(8) exception for public records. The trial court disagreed and overruled the objection. The State also presented a certified judgment entry from the Logan County Common Pleas Court in Case Number "CR03-02-0024." The entry stated that in 2002 "Sean R. Vaughn" was convicted of felony drug trafficking. The birthdate on the sentencing entry was December 12, 1980. Detective Jordan testified that Vaughn's date of birth was December 2, 1980. Jordan compared the CCH identifying data for the arrest and conviction in Logan County data and found it to be the same except for the date of birth on the judgment entry.

{¶ 4} Lauren Ditto, a criminalist and chemist at the Ohio State Highway Patrol Crime Laboratory, where the tablets were sent for testing, also testified at trial. Ditto said that she did the testing. She testified that there were 35 tablets in all and that 18 bore the

---

computerized network which provides computerized data and communications for criminal justice agencies within the state of Ohio." Ohio Adm.Code 4501:2-10-01(W).

[2] A computerized criminal history is "an electronic data processing file which is accessible using specific data fields" and "contain[ing] records of arrests and dispositions of criminal proceedings." Ohio Adm.Code 4501:2-10-01(G). A police officer's testimony is sufficient to show authenticity of a LEADS printout under Evid.R. 901. *State v. Papusha,* 12th Dist. Preble No. CA2006-11-025, 2007-Ohio-3966, ¶ 14 citing *Cleveland Metro. Park Dist. v. Schillinger,* 8th Dist. Cuyahoga No. 71512, 1997 WL 547946 (Sept. 4, 1997).

pharmaceutical imprint "M367" and 17 bore the imprint "M365." Ditto stated that pharmaceutical imprints indicate what substances are present and that online databases and other references can be used to look up a particular imprint. In this case, she searched an online pharmaceutical database for the two imprints on the tablets to "presumptively identify" them. Tr. 190. She found that the tablets and imprints corresponded to hydrocodone, a Schedule II controlled substance. Ditto also called this presumptive identification a "presumptive examination," Tr. 210-211, and referred to it as a presumptive test.

Q. Okay. When you say "presumptive testing," what does that mean?

A. It just gives a general idea of what is present, which then can determine what test I would perform next in order to confirm the substance present.

Tr. 191.

Q. All right. Presumptive meaning, well, it probably contains hydrocodone?

A. That's correct. Presumptive testing is just to give us an idea of what is present and from what we see will depict (sic) on what confirmatory test that we use.

Q. Sure. So the presumptive doesn't tell you what is actually in the pill. It says, well, you know, if this is the markings on there, then it could contain this; but you folks do additional testing to actually determine what's in the pill, correct.

A. That is correct.

Tr. 217.

Q. Now with regard to the M365, you kind of had the same thing here.

You looked at the markings?

A. Correct.

Q. And you determined, well, these might contain hydrocodone based on the research that I've done; but I don't know for sure, right?

A. Correct.

Tr. 225.

{¶ 5} After presumptively identifying the first set of tablets, Ditto then performed a confirmatory test on one of the M367 tablets; the results showed that the tablet did indeed contain hydrocodone. Ditto said that she did not perform a confirmatory test on any of the M365 tablets. Rather, she said that "I did a logo identification using the tablet marking." Tr. 214-215.

Q. And, again, based on that testing and those identifications, were you able to identify what was contained in State's Exhibit #5B [ the M365 tablets]?

A. Presumptively, it was found to contain acetaminophen and hydrocodone.

Tr. 215.

{¶ 6} At the close of the State's case, Vaughn moved for a judgment of acquittal on all the charges, renewing the motion after he presented his defense. He argued that the State had failed to present sufficient evidence that he had previously been convicted of felony drug trafficking, because the birthdate on the sentencing entry was not his birthdate. Vaughn also argued that the State had failed to present sufficient evidence that the tablets which were the basis of the count related to the pills marked M365 contained a controlled substance, because the presumptive testing was not enough to establish this. The trial court overruled both motions.

{¶ 7} The jury found Vaughn guilty of both charges of aggravated possession of drugs and guilty of the charge of having weapons under disability. The trial court sentenced Vaughn to three years in prison for having weapons under disability and to one year each for aggravated possession of drugs, all to be served concurrently, for an aggregate sentence of three years.

{¶ 8} Vaughn appeals.

## II. The Record of the Case

{¶ 9} Vaughn was indicted as described above in Clark C.P. No. 18-CR-005 (one count of having weapons under disability and two counts of aggravated possession of drugs).[3] He had previously been indicted in Clark C.P. Case No. 17-CR-567 on one count of aggravated robbery and one count of having weapons under disability. These cases were consolidated for trial. The jury found Vaughn guilty of the three charges in Case No. 18-CR-005 and not guilty of the two charges in Case No. 17-CR-567.

{¶ 10} As a preliminary matter, we observe that the judgment entry of conviction and Vaughn's notice of appeal list only Case No. 17-CR-567 and not Case No. 18-CR-005. Although the trial court's consolidation entry of February 26, 2018, stated that the cases were consolidated "for trial purposes," the trial court appears to have thereafter treated the cases as consolidated for all purposes; it included only Case No. 17-CR-567 on the verdict forms and judgment entry, and nothing was filed in Case No. 18-CR-005 after the consolidation order. The parties do not argue that the consolidation was

---

[3] We infer from the trial court's consolidation order that Case No.18-CR-005 was a reindictment of charges originally brought in Clark C.P. No. 17-CR-627, with minor changes and the addition of one charge. Case No. 17-CR-627 was also consolidated with the other two on February 26, 2018, and then dismissed on March 2, 2018.

improper, and we find no problem with it. However, the fact that the notice of appeal does not include the case number in which Vaughn was indicted (and therefore convicted) presents a jurisdictional concern on appeal, and the fact that the record of Case No. 18-CR-005 does not reflect his conviction of the offenses charged therein has the potential to cause confusion at the Ohio Department of Rehabilitation and Correction or with respect to future filings in that case.

{¶ 11} We will resolve these problems as follows: 1) we will sua sponte amend the notice of appeal to add Case No. 18-CR-005 and will include this number on our opinion and final entry; 2) as part of our disposition of this case, we will instruct the trial court to file two things: a notice in the record of Case No. 18-CR-005 indicating that all filings after the consolidation order appear in Case No. 17-CR-567, and an amended nunc pro tunc judgment entry in Case No. 17-CR-567, which adds the 18-CR-005 case number; 3) for purposes of this appeal, we will construe the record to include all of the filings in Case Nos. 17-CR-567 and 18-CR-005.

### III. Analysis

{¶ 12} Vaughn assigns two errors to the trial court. The first assignment of error challenges the admission of the CCH printout, and the second assignment challenges the overruling of his motion for acquittal.

### A. Hearsay

{¶ 13} Vaughn alleges in the first assignment of error that the trial court erred by admitting the CCH printout, and testimony related to it under the public-records hearsay exception in Evid.R. 803(8). He argues that the printout did not fall under the public-records exception because it was not a "public record" under Ohio's Public Records Act.

{¶ 14} As a general rule, hearsay is not admissible into evidence, Evid.R. 802, but there is an exception for certain public records. The exception in Evid.R. 803(8), titled "Public Records and Reports," states that the hearsay rule does not apply to "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report * * *." Vaughn contends that this exception applies only to information disclosable as a "public record" under Ohio's Public Records Act.

{¶ 15} Under the Public Records Act, criminal histories derived from computerized criminal databases, like LEADS printouts, are not "public records" because Ohio law prohibits public disclosure of the information. *See State ex rel. Master v. Cleveland*, 76 Ohio St.3d 340, 343, 667 N.E.2d 974 (1996) (saying that LEADS printouts are exempt from disclosure under Ohio law); R.C. 149.43(A)(1)(v) (defining "public record" and stating that it does not mean "[r]ecords the release of which is prohibited by state or federal law"). Some Ohio courts have held that, because LEADS printouts are not "public records," they do not fall under public-records hearsay exception. *E.g., State v. Straits*, 5th Dist. Fairfield No. 99 CA 7, 1999 WL 976212, *2 (Oct. 1, 1999) (concluding that "as a non-public record, LEADS printouts are not excepted from the hearsay rule under Evid.R. 803(8)." Curiously, that court also concluded that one of the LEADS printouts in that case was not hearsay, and not introduced for its truth, because it was used to verify vehicle ownership rather than to prove an element of the charged offenses). However, this is a minority view.

{¶ 16} The majority view is that the public-records exception to the hearsay rule does not apply only to "public records" under the Public Records Act. The Twelfth District,

citing a treatise on Ohio evidence law, has explained: "As Weissenberger states, the term, 'public records' in the title of Evid.R. 803(8) is a misnomer. A more accurate term for what the rule means is 'official records,' which Weissenberger defines as records 'made or done by an officer of the government,' not necessarily 'capable of being known or observed by all.' " *State v. McClain*, 12th Dist. Warren No. CA2005-09-102, 2006-Ohio-6708, ¶ 8, fn. 2, quoting Weissenberger, *Ohio Evidence Treatise*, Section 803.102, at 531 (2006). LEADS information is maintained by the Ohio state highway patrol superintendent. Ohio Adm.Code 4501:2-10-01(W). Courts following the majority view have held that a LEADS printout is admissible under Evid.R. 803(8)(a) because the printout "contains only the routine activities of a public agency." *State v. Cooper*, 8th Dist. Cuyahoga No. 43765, 1982 WL 5240, *3 (Mar. 18, 1982). *Accord McClain* at ¶ 8; *State v. Freeman*, 8th Dist. Cuyahoga No. 91842, 2009-Ohio-5218, ¶ 26.

{¶ 17} We agree with the majority view. We see little reason that the public-records hearsay exception should track the Public Records Act. LEADS information is not a "public record" because Ohio law expressly prohibits disclosure of the information. We are unaware of any statute that similarly prohibits LEADS information from being admitted as evidence. The reason for prohibiting disclosure of certain information as a "public record" undoubtedly differs from the reason for excluding hearsay evidence. While we will not speculate on the reason for the disclosure prohibition contained in the Public Records Act, we doubt that it was to prevent untrustworthy evidence from being admitted at trial, the reason for the hearsay rule.

{¶ 18} CCH information, like LEADS information, is maintained by a public office or agency. By law, the bureau of criminal identification and investigation (BCI&I) is

statutorily required to keep criminal-history records. *See* R.C. 109.57(A). This includes "records of arrests and dispositions of criminal proceedings." Ohio Adm.Code 4501:2-10-01(G). Each jail, prison, community-based correctional facility or other detention facility is required to furnish similar information to BCI&I for those in their custody suspected of having committed a felony or certain misdemeanors. R.C. 109.57(A)(1). Each clerk of a court of record[4] is required to submit a weekly report to BCI&I containing certain case information for all felonies and certain misdemeanors. R. C. 109.57(A)(2). BCI&I is responsible for keeping these records. Ohio Adm.Code 4501:2-10-01(G). ("The repository of these records is the responsibility of the [BCI&I] as specified in sections 109.57 and 109.60 of the Revised Code."). Like a LEADS printout, a CCH printout reflects routine activities of a public agency. Although the records are not available to the general public, they are widely available to and relied upon by criminal justice agencies such as the police, regional dispatchers, jails, prosecutors, probation officers, and prisons. In our view, these records created through statutory and administrative obligations, constitute public records and are admissible under Evid.R. 803(8)(a).

{¶ 19} The trial court did not violate the hearsay rule by admitting the CCH printout and related testimony.

{¶ 20} The first assignment of error is overruled.

## B. Motion for Judgment of Acquittal

{¶ 21} The second assignment of error alleges that the trial court erred by overruling Vaughn's Crim.R. 29 motion for a judgment of acquittal. Vaughn argues that the evidence presented was not sufficient to sustain his conviction for having weapons

---

[4] Clerks of the Supreme Court and courts of appeals are excepted from this requirement.

under disability or his conviction for aggravated possession of drugs related to the M365 tablets.

{¶ 22} "A motion for judgment of acquittal tests whether the evidence, when viewed in a light most favorable to the State, would permit a reasonable mind to find that all the essential elements of the crime charged have been proven beyond a reasonable doubt." *State v. Videen*, 2013-Ohio-1364, 990 N.E.2d 173, ¶ 28 (2d Dist.), citing *State v. Bridgeman*, 55 Ohio St.2d 261, 263, 381 N.E.2d 184 (1978).

*Having weapons under disability*

{¶ 23} Generally, a person is guilty of having weapons under disability if the person knowingly acquires, has, carries, or uses any firearm or dangerous ordnance and if the person "has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." R.C. 2923.13(A)(3). Vaughn argues that the state failed to present sufficient evidence that he had a prior felony drug conviction.

{¶ 24} The state presented two documents as evidence that Vaughn had a prior conviction; Detective Jordan testified about both documents. The CCH printout contained Vaughn's name, birthdate (December 2, 1980), social security number, and information showing that Vaughn had been convicted of felony drug trafficking in Case No. "CR03020024-1." Jordan testified that Vaughn's birthdate and social security number on the CCH printout were correct. The state then presented the certified sentencing entry from the Logan County Court of Common Pleas. The entry showed that "Sean R. Vaughn" was convicted of felony drug trafficking in Case No. "CR03-02-0024." The birthdate listed for the defendant was December 12, 1980. Vaughn contends that, because the birthdate

on the sentencing entry was not his birthdate, the sentencing entry could not establish that he had a prior felony drug trafficking conviction.

{¶ 25} Vaughn's argument here depends on our concluding that the CCH printout was erroneously admitted. But we have concluded that the CCH printout was admissible. The combination of the sentencing entry, the detective's testimony, and Vaughn's data in the CCH printout, if believed, together leave little doubt that Vaughn had a prior conviction for felony drug trafficking and that the birthdate on the sentencing entry was simply a mistake. Accordingly, there was sufficient evidence to find that Vaughn had been convicted of felony drug trafficking.

*Aggravated possession of drugs*

{¶ 26} A person is guilty of aggravated possession of drugs if the person possesses a "controlled substance." R.C. 2925.11(A). Vaughn was charged with two counts of aggravated possession of drugs, one for the set of 18 tablets with an "M367" imprint and the other for a set of 17 tablets with an "M365" imprint. Here, he challenges only the charge for the M365 tablets. Vaughn argues that the state failed to present sufficient evidence that the M365 tablets contained a controlled substance.

{¶ 27} Lauren Ditto, the criminalist who examined the tablets, said that she concluded that the M365 tablets contained hydrocodone based solely on examination, research and identification using the appearance and imprint on the tablets. She said that the "logo imprints" on a pharmaceutical tablets identify the drug. (Tr. 186.) Online databases and literature references can be used to match a tablet's markings with a particular drug. Ditto explained: "I can type in the tablet shape, color, and the logo I see present into the database; and it will generate images of potential matches. I then

compared the logo I have present in front of me with those that are online." (Tr. at 191.) She said that, while confirmatory testing may be done to confirm a drug's presumptive identity, she did not do any confirmatory testing on the M365 tablets. Accordingly, Ditto's conclusion that the M365 tablets contained hydrocodone was based solely on the presumptive physical examination. She testified:

> Q. (Prosecutor): And, again, based on that [presumptive examination and research] testing and those identifications, were you able to identify what was contained in State's Exhibit 5(B) [the M365 tablets]?
>
> A. Presumptively, it was found to contain acetaminophen and hydrocodone.

Tr. at 215.

**{¶ 28}** However, some of her further testimony in describing the "presumptive" test was:

> Q. (Defense counsel – on cross examination) And you determined, well, these might contain hydrocodone based on the research that I've done; but I don't know for sure, right?
>
> A. Correct.

* * *

> Q. So you weren't able to determine for sure what was in any of the [M]365 pills?
>
> A. That is correct.

* * *

> Q. (Prosecutor – on redirect) [Your report] doesn't say anything about that Item Number 2 [M365 tablets] being a Scheduled II controlled substance,

correct?

A. I didn't confirm the presence of any controlled substance in it.

Q. So basically what you're saying is we don't know – We have no idea for sure what's in it?

A. That is correct. I did not perform any controlled substance testing on it.

(Tr. 225-226, 228.)

{¶ 29} Vaughn contends that presumptive testing alone was not enough to conclude that the M365 tablets contained a controlled substance.

{¶ 30} "Under Ohio law, the state can establish the identity of a controlled substance through either direct or circumstantial evidence." *State v. Johnson*, 2015-Ohio-3248, 40 N.E.3d 628, ¶ 68 (10th Dist.). Courts have held that testimony from a proper witness identifying a pill as a particular pharmaceutical drug based solely on the pill's markings is sufficient circumstantial evidence that the pill is a controlled substance. *E.g., State v. Volpe*, 10th Dist. Franklin No. 06AP-1153, 2008-Ohio-1678, ¶ 37 (testimony identifying alprazolam based solely on pharmaceutical markings found to be sufficient evidence); *State v. Foster*, 11th Dist. Portage No. 2004-P-0104, 2005-Ohio-5281, ¶ 36-37 (testimony identifying hydrocodone based solely on pharmaceutical markings was sufficient evidence); *State v. Bailey*, 9th Dist. Summit No. 22773, 2006-Ohio-2042, ¶ 10-11 (testimony identifying alprazolam based solely on pharmaceutical markings was sufficient evidence). For example, in *Volpe*, the witness was the chief toxicologist for the county. He testified that his conclusion that the pills at issue contained alprazolam was based solely on the pills' markings, using medical-reference materials. The Tenth District held that this was sufficient to prove the drugs' identity, saying that "[t]he State can

establish the identity of a drug through circumstantial evidence as long as the witness (even a lay witness) has firsthand knowledge and sufficient experience or specialized knowledge for arriving at the opinion expressed." *Volpe* at ¶ 37, citing *State v. McKee*, 91 Ohio St.3d 292, 297, 744 N.E.2d 737 (2001).

**{¶ 31}** Here, Ditto's qualifications would ordinarily permit her to express an opinion on the identity of the M365 tablets. She testified that her job at the crime lab was to test evidence for controlled substances. She further testified that she had completed the crime lab's apprenticeship program in the identification of controlled substances and had completed coursework for a master's degree in forensic chemistry. Ditto had first-hand knowledge, sufficient experience, and specialized knowledge to express an opinion on the identity of the M365 tablets.

**{¶ 32}** Had Ditto expressed an opinion that she believed the M365 tablets contained hydrocodone (i.e,, that they were the proper shape, size, color and they appeared unadulterated, or perhaps that they were in an identified prescription container) we would reject Vaugn's contention that the evidence was insufficient to support a conviction of possession of drugs for the 17 M365 tablets on the basis that they were a controlled substance. But that was not her testimony. She affirmatively stated that she had "no idea" what the tablets contained and was not sure what they contained. On this record, we agree that there was insufficient evidence to sustain the conviction for possession of the 17 M365 tablets.[5]

---

[5] Had we not vacated the second aggravated possession of drugs conviction on sufficiency of the evidence, we would have requested that the parties brief an issue we suspect could be plain error. The 18 M367 tablets and the 17 M365 tablets were all found in the same Crown Royal bag. Chemist Ditto explained she did not test one of the second set because the combination of both did not aggregate to a bulk amount and would not

**{¶ 33}** The second assignment of error is sustained.

## IV. Conclusion

**{¶ 34}** We have overruled the first assignment of error and have sustained the second assignment of error. We affirm the conviction for having a weapon under disability and for aggravated possession of drugs related to the M367 tablets. We vacate the conviction for aggravated possession of the M365 tablets. We remand the case to the trial court solely for the purpose of filing a judgment entry consistent with this opinion, which correctly lists the counts of which Vaughn has been convicted and the case numbers to which the judgment is addressed. As discussed above, the trial court shall file the corrected judgment entry in Clark C.P. Case No. 17-CR-567, and it shall also file a notice in the record of Clark C.P. No. 18-CR-005 indicating that all future filings in that case may be found in the record of Clark C.P. No. 17-CR-567. The trial court also shall forward a copy of the revised judgment entry to the Ohio Department of Rehabilitation and Correction, so that its record will accurately reflect the affirmed convictions and case numbers.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

---

have changed the charges in this case. Tr. 214. The difference between the two sets was only the strength of the hydrocodone in the prescription. Assuming that the only controlled substance in both sets was hydrocodone, charging Vaughn with a separate count for possession, in the same container, of stronger hydrocodone and weaker hydrocodone was like charging a defendant with possession of crack cocaine for the bigger rocks in a container and separately charging the same defendant for possession of the smaller rocks in the same container. It may be, in the proper case, separate identifiable charges would be appropriate. But we fail to comprehend how that would be permissible here.

Copies sent to:

Andrew P. Pickering
Sean Brinkman
Hon. Douglas M. Rastatter