OPINION
{¶ 1} Defendant-appellant, Mitchell M. Papusha, appeals his conviction for receiving stolen property. We affirm appellant's conviction.
 {¶ 2} On August 24, 2006, Trooper Duteil of the Ohio State Highway Patrol stopped appellant on I-70 for a minor misdemeanor traffic offense. During the stop, appellant got out of the vehicle, a 1991 Ford Explorer, and began walking toward Trooper Duteil, who then told appellant to stand still. When asked if he had any identification, appellant admitted that he *Page 2 
was traveling from Colorado with no identification. Appellant initially provided the trooper with a false name. After appellant provided Trooper Duteil with his real name, the trooper learned that appellant was driving under a suspended license, and appellant was placed under arrest.
 {¶ 3} Trooper Duteil conducted a search of the vehicle incident to the arrest. The trooper noticed a screwdriver on the driver's side floorboard and that the vehicle's ignition switch had been altered. He also found a Colorado license plate in the back of the car that differed from the Colorado plate on the exterior of the car. Prior to arresting appellant, the trooper ran the license plate located on the vehicle through the Law Enforcement Automated Data System ("LEADS"), but the search returned no results. When Trooper Duteil ran the plate discovered in the back of the vehicle through LEADS, however, he discovered that the plate was registered to Marie Cordero. The trooper then ran the VIN on the vehicle through LEADS and learned that the vehicle was also registered to Marie Cordero. Trooper Duteil questioned appellant about the vehicle's registration, and appellant responded that he had just purchased the Ford Explorer.
 {¶ 4} On the following day, LEADS sent a message to Trooper Duteil informing him that the 1991 Ford Explorer had been reported stolen. The trooper then interviewed appellant in jail. During this interview, appellant said that a friend possessed the bill of sale, but initially lied about the friend's name and later refused to give the correct name.
 {¶ 5} Trooper Duteil contacted the investigating officer in Grand Junction, Colorado, to confirm that the vehicle was reported stolen. The trooper also contacted Cordero, the person to whom the vehicle was registered, to confirm with her that the vehicle was stolen. Trooper Duteil spoke with Cordero's daughter who translated for her mother and verified that the car was stolen.
 {¶ 6} Appellant was subsequently charged with and indicted on one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree. On October 23, *Page 3 
2006, a jury found appellant guilty as charged. As a result, the trial court sentenced appellant to a prison term of twelve months. Appellant timely appealed, raising two assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW BY ALLOWING THE STATE OF OHIO TO INTRODUCE A LEADS REPORT AND TESTIMONY CONCERNING THE CONTENTS OF THE LEADS REPORT AS EVIDENCE THAT THE VEHICLE IN THE APPELLANT'S POSSESSION WAS THE PRODUCT OF A THEFT OFFENSE."
 {¶ 9} Appellant first argues that the trial court committed reversible error by allowing the state to introduce a LEADS report in its case-in-chief over appellant's hearsay objection. Appellant contends that the public records hearsay exception, Evid.R. 803(8), does not apply to the LEADS report, and without it, the State would have been unable to prove the elements of R.C. 2913.51(A) beyond a reasonable doubt.
 {¶ 10} Evidentiary rulings lie within the broad discretion of the trial court and will form the basis for reversal on appeal only upon an abuse of discretion that amounts to prejudicial error. State v.Graham (1979), 58 Ohio St.2d 350, 352. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the evidence's admissibility. State v. Martin (1985), 19 Ohio St.3d 122,129. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Wolons (1989), 44 Ohio St.3d 64,68.
 {¶ 11} In admitting the LEADS printout into evidence, the trial court determined that the printout was hearsay, but determined that the report should be admissible pursuant to the hearsay exception in Evid.R. 803(8), which provides:
 {¶ 12} "Records, reports, statements, or data compilations, in any form, of public *Page 4 
offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate a lack of trustworthiness."
 {¶ 13} A LEADS report contains only the routine activities of a public agency relative to the ownership of a vehicle and falls under Evid.R. 803(8)(a). State v. Cooper (Mar. 18, 1982), Cuyahoga App. No. 43765;City of Middleburg Heights v. D'ettorre (July 31, 2000), Cuyahoga App. No. 76512, discretionary appeal not allowed, (2000), 90 Ohio St.3d 1467. Therefore, the prosecution may offer it in a criminal case.Cooper, citing State v. Scott (Oct. 1, 1981), Cuyahoga App. No. 43160.
 {¶ 14} Trooper Duteil properly authenticated the LEADS printout in his testimony pursuant to Ohio Evid.R. 901, which requires that prior to admitting evidence sufficient to support a finding that the matter in question is what its proponent claims, the proponent must authenticate or identify the evidence. Two examples of authentication or identification that conform with the requirements of Ohio Evid.R. 901 include (1) testimony of a witness with knowledge that a matter is what it is claimed to be, and (2) evidence that a writing authorized by law filed in a public office is from such office where items of that nature are kept. Ohio Evid.R. 901(B)(1) and (7); see also Cooper. A police officer's testimony is sufficient to show authenticity of a LEADS printout under Evid.R. 901. Cleveland Metro. Park Dist. v.Schillinger (Sept. 4, 1997), Cuyahoga App. No. 71512.
 {¶ 15} In this case, the prosecution solicited extensive testimony about LEADS from Trooper Duteil, including how the system works, what procedures the agencies are required to follow, and the nature of the LEADS training he obtained. In his testimony, Trooper Duteil identified and authenticated the LEADS printout, stating that the printout was identical to the *Page 5 
report on the computer screen in his car that he used during the incident with appellant.
 {¶ 16} Although we acknowledge a split among the courts of appeals regarding the admissibility of the LEADS report,[1] we find that because Trooper Duteil identified and authenticated the LEADS report, the trial court, in its discretion, properly admitted the report into evidence. Accordingly, we overrule appellant's first assignment of error.
 {¶ 17} Assignment of Error No. 2:
 {¶ 18} "IF THE TRIAL COURT HAD APPLIED THE CORRECT LAW AND PREVENTED THE STATE OF OHIO FROM INTRODUCING THE LEADS REPORT INTO EVIDENCE APPELLANT'S CONVICTION WOULD HAVE BEEN AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 19} Appellant argues because the LEADS reports were improperly admitted, appellant would not have been convicted because the conviction would have been against the manifest weight of the evidence. Even if we had found that the LEADS reports were improperly admitted, appellant's conviction would not be against the manifest weight of the evidence.
 {¶ 20} When reviewing the manifest weight of the evidence to determine whether reversal is warranted, the court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the court must reverse the conviction and order a new trial. State v. *Page 6 Thompkins, 78 Ohio St.3d. 380, 387, 1997-Ohio-52. A court should only exercise its discretionary power to grant a new trial in the exceptional case where the evidence weighs heavily against the conviction. Id. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given to the evidence. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} In order for the jury to find appellant guilty of R.C.2913.51(A), the state had to prove that appellant received, retained, or disposed of property of another, knowing or reasonably believing that the property had been obtained through the commission of a theft offense. In reviewing the entire record and weighing the evidence and all reasonable inferences, we cannot determine that the jury clearly lost its way and created a manifest miscarriage of justice that would cause us to reverse the conviction.
 {¶ 22} At trial, the state presented evidence that the ignition had been "busted" and that a screwdriver was found on the floorboard of the driver's side of the vehicle. Trooper Duteil testified that he found a license plate that corresponded with the VIN registration in the back of the Ford Explorer and that it differed from the plates attached to the exterior of the vehicle. Trooper Duteil also testified that he confirmed the vehicle was stolen by conducting a LEADS check and contacting the victim vehicle owner. Further, appellant originally gave a false name to the trooper and also gave inconsistent and false statements about purchasing the car, the amount he paid, and who had possession of the bill of sale. Even at trial, appellant was unable to reconcile his testimony with information on an alleged bill of sale faxed from Colorado. In his testimony, appellant also admitted to lying to Trooper Duteil on several occasions. Appellant had prior convictions for impersonation and unauthorized use of a vehicle. Although we have determined that the trial court properly admitted the LEADS report, we find that even without the LEADS report, the jury's verdict would not be against the *Page 7 
manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
 {¶ 23} Judgment affirmed.
YOUNG, P.J. and WALSH, J., concur.
[1] Our holding is consistent with the Eighth Appellate District, who has repeatedly held that a LEADS report is admissible when properly authenticated, pursuant to Evid.R. 803(8)(a) and 901. See Cooper;Schillinger; D'ettorre. The Eleventh Appellate District has also addressed the issue, holding that a LEADS report must be properly authenticated prior to its admittance into evidence. See State v.Peterson (Nov. 29, 1996), Trumbull App. No. 96-T-5456 (holding that the trial court improperly admitted the LEADS report at trial because the police officer failed to properly authenticate the document). The Fifth Appellate District, however, has held that LEADS printouts are not admissible pursuant to Evid.R. 803(8), finding that they are not public records because they are exempt from disclosure under the Ohio Public Records Act. State v. Straits (Oct. 1, 1999), Fairfield App. No. 99 CA 7. *Page 1